## Whelan, et al. v. Whelan, et al.

### (Decided December 12, 1924.)

### Appeal from Meade Circuit Court.

1. **Deeds—Evidence Held Insufficient to Establish Undue Influence.** —Evidence that grantor, who lived on farm with grantee, his son, usually deferred to judgment of son, and, after son's return from war, restored to him sums paid to father as dependent out of son's salary as soldier, held insufficient to establish undue influence in procuring execution of deed, in consideration of support.

2. **Deeds—Evidence Held Insufficient to Establish Nonacceptance of Deed.**—Grantee's statements, after delivery of deed, held insufficient to establish nonacceptance of deed.

J. D. HARDIN and W. D. ASHCRAFT for appellants.

L. A. FAUREST and W. H. GRAY for appellees.

OPINION OF THE COURT BY JUDGE CLARKE—Affirming.

The parties to this action are the heirs of P. T. Whelan, and its purpose is to cancel a deed to 132 acres of land he made to appellees shortly before his death, and to partition same among the parties.

The deed is attacked upon three grounds, namely: Mental incapacity of the grantor, undue influence, and nonacceptance by the grantees. Upon each of these questions of fact the chancellor found for the defendants and dismissed the petition.

The evidence upon the question of mental incapacity is all one way, and so fully sustains the chancellor's finding that that question is not now urged.

Upon the question of undue influence, it is insisted that because of the confidential relationship existing between the parties, the burden was upon the defendants to prove that the transaction was fair and free from fraud, and that they failed to sustain that burden.

Undue influence is erroneously assumed from the fact that the father usually, but not always, deferred to the judgment of the son, who lived with him, in the management of the farm, which is not unusual; and because the former, upon the return of the latter from the war, in 1919, restored to him what remained of the sums paid to the father as a dependent by the government out of the salary of the son as a soldier, which was but right. There is no other evidence from which undue influence might be inferred.

The consideration for the deed was the agreement upon the part of the grantees to care for and support the aged and physically infirm father during his life, and to give him proper interment after death.

The land was worth only from $2,000.00 to $2,500.00 at the most, and if the father had lived for any considerable length of time, no one would have suggested that the transaction was unfair or tainted with fraud. Nor does the fact that he died unexpectedly a short time thereafter justify such an inference, which is not otherwise deducible from any evidence in the record. The trade that has turned out to be a good one for the appellees might have been a very burdensome one to them, and we concur in the opinion of the chancellor, that it was shown to be both fair and free from fraud or undue influence.

It is established by uncontradicted evidence that after having executed the deed, the grantor delivered it to the grantees and that they accepted it.

The evidence relied upon by appellants to prove non-acceptance is, that thereafter and when informed that there was a mortgage of $500.00 on the land, the grantee, Carl J. Whelan, said if that were true, as it later proved not to be, that he would not have the deed, and that after the death of his father when asked whether or not he intended to claim the land against the other heirs, he said he would have to have time to think the matter over. He not only denies making these statements, but they were clearly made, if at all, after the deed had been accepted. He retained possession of both the deed and the farm, and there is no claim that he ever offered to return the deed to, or repudiate the trade with, the father.

The evidence, therefore, upon this question also fully sustains the chancellor's finding.

Complaint is also made of the chancellor's ruling in sustaining exceptions to many questions and answers in

the depositions. We do not think the chancellor erred in so doing, but whether so or not is immaterial, since the same conclusion is inevitable whether this evidence be considered or disregarded.

Judgment affirmed.